MAHONING COUNTY BAR ASSOCIATION *v*. PALOMBARO.

[Cite as *Mahoning Cty. Bar Assn. v. Palombaro*,

121 Ohio St.3d 351, 2009-Ohio-1223.]

*Attorneys — Misconduct — Multiple Disciplinary Rule violations, including aiding nonlawyers in the unauthorized practice of law and failing to maintain client funds in a separate account — One-year suspension stayed on conditions.*

(No. 2008-2043 — Submitted December 17, 2008 — Decided March 24, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-057.

_____

**Per Curiam**.

{¶ 1} Respondent, Albert A. Palombaro of Youngstown, Ohio, Attorney Registration No. 0016727, was admitted to the practice of law in Ohio in 1984. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for one year and stay the suspension on remedial conditions, based on findings that he aided nonlawyers in the unauthorized practice of law, failed to provide required disclosures as to his lack of malpractice insurance, and failed to properly preserve and account for client funds. We agree that respondent committed professional misconduct as found by the board and that a one-year stayed suspension is appropriate.

{¶ 2} Relator, Mahoning County Bar Association, charged respondent with multiple violations of the Disciplinary Rules of the former Code of Professional Responsibility and the Rules of Professional Conduct that superseded the code provisions on February 1, 2007. A panel of the board heard the case and, in accordance with the parties' stipulations, dismissed some charges,

found misconduct relative to the charges remaining, and recommended the one-year stayed suspension. The board adopted the panel's findings of fact, conclusions of law, and recommendation.

**Misconduct**

*The Jordan Grievance*

{¶ 3} Respondent admitted violations of DR 3-101(A) (prohibiting a lawyer from aiding a nonlawyer in the unauthorized practice of law) and 1-104(A) (requiring a lawyer to disclose to a client his or her lack of malpractice insurance coverage) in connection with his representation of Bradwin and Denise Jordan.

{¶ 4} In 2005, the Jordans nearly lost their home. On the day the couple received notice of their mortgagee's action to foreclose, United Foreclosure Managers, L.L.C. ("UFM"), a company claiming to offer legitimate assistance to debtors facing foreclosure, solicited the Jordans as customers. UFM later hired respondent to defend the Jordans by filing an answer or taking other legal action to avoid the entry of a default judgment.

{¶ 5} UFM is owned largely by Fred Regna, who has not been admitted to the Ohio bar, has not been granted active status, and has not been certified to practice here. Through its agents and employees, all unlicensed laypersons, UFM negotiated on behalf of customers to resolve pending collection claims and prevent foreclosure. In conceding that he helped UFM practice law in contravention of Ohio licensure requirements, respondent stipulated to the following facts:

{¶ 6} "UFM * * * arranged a meeting with the Jordans at a rest stop on the Ohio Turnpike at which time Mrs. Jordan signed the necessary paperwork to retain UFM and paid them half of its $990.00 fee, with the second half of that payment made the following month.

{¶ 7} " * * *

**{¶ 8}** "UFM dictated the scope of Respondent's duties which were limited to filing a Leave to Plead and an Answer. He was paid $55.00 by UFM for those services.

**{¶ 9}** "Respondent did make timely filing of the Leave to Plead and Answer in the foreclosure action. However, he did so without ever having spoken with the Jordans, believing that UFM had done so. He remained as counsel of record for the Jordans throughout the pendency of the foreclosure action without providing any verbal or written communications to the Jordans concerning the status of their case or his limited involvement therein.

**{¶ 10}** "Respondent was of the impression that UFM had communicated to the Jordans that Mr. Palombaro's participation in their representation was limited to the filing of the two pleadings previous [sic] referenced, that UFM would be in communication with the mortgage company in an effort to resolve the dispute and avoid foreclosure, and that UFM would be providing to the Jordans those communications necessary to keep then apprised of the developments in their case.

**{¶ 11}** "Respondent filed an answer on behalf of the Jordans on May 26, 2005; on July 18, 2005, LaSalle Bank filed its Motion for Summary Judgment with Affidavit.

**{¶ 12}** "On August 17, 2005, the court, with no pleadings in opposition having been filed, rendered summary judgment in favor of the plaintiff, LaSalle Bank, and against the Jordans. On September 7, 2005, an order of sale was issued; and, on January 11, 2006, the home was sold at foreclosure auction for $114,600.00.

**{¶ 13}** "Respondent never provided verbal or written communication to the Jordans concerning the filing of a motion for summary judgment against them, that an order granting summary judgment bad been awarded against them, or that an order of sale had [been] issued.

{¶ 14} "The Jordans were able to re-purchase their house prior to eviction, but under terms that were to their financial detriment.

{¶ 15} "These circumstances led the Jordans to * * * file a grievance [and] a civil lawsuit in Lucas County against UFM and Respondent.

{¶ 16} "* * *

{¶ 17} "Respondent has settled the civil lawsuit with the Jordans, and full payment of restitution due from Respondent has been paid."

{¶ 18} In conceding that he violated disclosure requirements for advising clients about his lack of professional liability insurance, respondent stipulated:

{¶ 19} "Respondent did not have any malpractice insurance in effect to provide coverage for this incident, and did not provide notification to the Jordans that he was uninsured for malpractice."

{¶ 20} Like the panel and board, we accept the parties' stipulations and find respondent in violation of DR 1-104(A) and 3-101(A).

*The Candle Grievance*

{¶ 21} Respondent admitted violations of DR 9-102(A) (requiring a lawyer to maintain client funds in a separate, identifiable bank account), 9-102(B)(3) (requiring a lawyer to maintain complete records of client property in his or her possession and render appropriate accounts), and 9-102(B)(4) (requiring a lawyer to promptly pay requested funds in his or her possession that the client is entitled to receive) in connection with his representation of Michael Candle.

{¶ 22} In 2003, Candle accepted a total of $19,000 for the sale of two vehicles but then never delivered the vehicles to the buyer. He was indicted for theft and forgery in October 2004 and hired respondent to represent him. After various continuances, Candle entered a guilty plea in June 2007 to two felony counts. The judgment entry incorporated the terms of the negotiated plea and provided that at the sentencing hearing, "Candle was to have a total amount of $19,000 via bank check for restitution; and, if that occurred, the charges would be

amended to theft, misdemeanors of the first degree. If not, the Defendant would be sentenced to the felonies."

{¶ 23} In November 2005, Candle had acquired more than $19,000 in a real estate transaction. He claimed to have transferred the money to respondent to be held in trust in anticipation of paying restitution to the victim of his crimes. Respondent, on the other hand, maintained that the funds were in payment of legal fees for a number of cases he had handled for Candle over the preceding years. He nevertheless conceded having failed to properly preserve, protect, and account for his client's funds, stipulating to the following facts:

{¶ 24} "In November 2005, Respondent made a nineteen thousand dollar * * * deposit into his trust account. This money was never dispersed from the * * * account to Respondent's own business account, but remained in the * * * account for an extended period of time.

{¶ 25} "Respondent's trust account records for November 2005 include a number of charges for checks for which there were not sufficient funds and reflect other improper payments out of the trust account.

{¶ 26} "Respondent entered into an agreement to provide this money to Candle so that Candle can make restitution to [his victim], although Respondent continues to maintain that these funds were retained based upon services rendered to the grievant. Respondent has reserved his right to legally pursue Candle for past legal services provided.

{¶ 27} "Respondent has represented Candle in a number of matters over a period of years since 1998, but has been unable to produce detailed billing records, either himself or from his office staff.

{¶ 28} "Respondent has in fact made full restitution to Candle, Candle is satisfied, and Candle wishes for his grievance to be dismissed, or, if that does not occur, for Respondent not to be punished by an actual suspension."

**{¶ 29}** Like the panel and board, we accept the stipulations that respondent violated DR 9-102(A), 9-102(B)(3), and 9-102(B)(4).

*Client Trust Account Improprieties*

**{¶ 30}** Respondent also admitted that from November 1, 2005, and continuing through to December 31, 2007, he failed as a general matter to properly preserve and safeguard client funds in violation of DR 9-102(A), 9-102(B)(3), and 9-102(B)(4) and Prof.Cond.R. 1.15(a) (specifying conditions for holding client funds in trust, including the maintenance of an identifiable trust account and associated recordkeeping), 1.15(b) (with an exception not relevant here, prohibiting a lawyer from commingling his or her own funds with client funds), and 1.15(c) ("A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance to be withdrawn by the lawyer only as fees are earned or expenses incurred"). Respondent regularly wrote checks from his client trust account to pay his own business expenses and overdrew the account, signaling that he was commingling his funds with those of clients. Like the panel and board, we accept the stipulation as to this misconduct.

**Sanction**

**{¶ 31}** In recommending the one-year suspension, stayed on conditions, the panel and board weighed the aggravating and mitigating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). Stipulated factors weighing against respondent include that he engaged in a pattern of misconduct and committed multiple offenses. BCGD Proc.Reg. 10(B)(1)(c) and (d). Stipulated factors weighing in respondent's favor include that he had no prior record of discipline, had cooperated in the disciplinary proceedings, and as further evidenced by letters or testimony from judges, attorneys, and clients, had

established his good character and reputation apart from his misconduct. BCGD Proc.Reg. 10(B)(2)(a), (d), and (e).

{¶ 32} Respondent has already made restitution to the Jordans, Candle, and Westfield Insurance, a third grievant whose grievance did not rise to the level of professional misconduct. See BCGD Proc.Reg. 10(B)(2)(c). According to their counsel, these grievants did not seek an actual suspension of respondent's license. Respondent's devotion to charitable and pro bono work also weighs in his favor.

{¶ 33} Consistent with the parties' proposed sanction, the panel and board recommended a two-year probation, see Gov.Bar R. V(9), along with the one-year suspension and stay under the following conditions:

{¶ 34} "1. Monitoring of the Respondent's bank accounts by Attorney Kent Marcum, who shall be paid by Respondent. Kent Marcum shall provide quarterly reports to the Relator and Supreme Court.

{¶ 35} "2. Full restitution be made to the Michael Candle, Westfield Insurance, and the Jordans, as agreed to between Respondent and these grievants.

{¶ 36} "3. In addition to any other CLE requirements imposed by the Supreme Court, attendance by Respondent at a seminar, approved by Relator, that addresses law office management.

{¶ 37} "4. Payment of all costs of this action."

{¶ 38} We accept the recommendation of the parties, panel, and board. Respondent is therefore suspended from the practice of law in Ohio for one year. The suspension is stayed on the conditions cited in the board report. Respondent is placed on a two-year monitored probation pursuant to Gov.Bar R. V(9). If respondent violates the conditions of the stay and probation, the stay will be lifted, and he will serve the entire one-year suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

David C. Comstock Jr. and Ronald E. Slipski, for relator.

John B. Juhasz, for respondent.

_____