CINCINNATI BAR ASSOCIATION *v.* HARWOOD.

[Cite as *Cincinnati Bar Assn. v. Harwood*,

**125 Ohio St.3d 31, 2010-Ohio-1466.]**

*Attorneys at law — Misconduct — Failure to exercise independent professional judgment on behalf of clients — Failure to maintain professional-liability insurance — Consent-to-discipline agreement — Six-month stayed suspension.*

(No. 2009-2277 — Submitted January 13, 2010 — Decided April 7, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-058.

_____

**Per Curiam.**

{¶ 1} Respondent, Christopher S. Harwood of Burlington, Kentucky, Attorney Registration No. 0081704, was admitted to the practice of law in Ohio in 2007. Relator, Cincinnati Bar Association, filed a complaint charging respondent with violating his oath of office and several Rules of Professional Conduct. After respondent initially submitted an answer denying that he had committed any misconduct, the parties entered into a consent-to-discipline agreement filed pursuant to Section 11 of the Rules and Regulations Governing Procedure and Complaints Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."), in which they stipulated to facts and misconduct and jointly proposed a sanction. The Board of Commissioners on Grievances and Discipline found that respondent committed misconduct by disregarding his duty to exercise independent professional judgment on behalf of clients who were facing foreclosure and failing to inform his clients that he did not maintain professional-liability insurance. The board accepted the proposed sanction and recommends

that we suspend respondent from the practice of law in Ohio for six months, with the entire suspension stayed upon the condition that he commit no further misconduct. We accept the board's finding of misconduct and agree that a six-month suspension, with the entire period stayed upon the condition that respondent commit no further misconduct, is an appropriate sanction.

**Misconduct**

{¶ 2} The parties stipulated that beginning in August 2008 and continuing until the end of January 2009, respondent worked as a sole practitioner from his home. During this period, respondent had no professional-liability insurance and failed to inform any of his clients of this fact.

{¶ 3} In September 2008, respondent accepted an offer to perform legal work for American Foreclosure Professionals, Inc., and Foreclosure Assistance USA, Inc. ("foreclosure companies"). Between October 2008 and January 2009, respondent represented over 50 clients, including persons who resided in Ohio as well as West Virginia and California, whom the foreclosure companies referred to him. Respondent signed a document agreeing to the procedures that the foreclosure companies expected him to follow in representing their customers. These companies solicited persons who were facing foreclosure and represented that they could save their homes from foreclosure by negotiating with the lender.

{¶ 4} The foreclosure companies charged between $900 and $1,200 for the services they provided and informed customers that the fee included legal representation arranged and paid for, in part, by the companies. The foreclosure companies asked their customers to execute a request for legal services and then forwarded the executed request and the client's contact information and goals, e.g., keeping or selling the property, to respondent. Respondent received $100 to file an answer in each case referred to him.

{¶ 5} Upon receiving a referral and an executed agreement for legal representation, and generally more than a month before filing an answer,

2

respondent would send a case-status letter with copies of a motion for enlargement of time to respond. In the letter, respondent asked each client to contact him regarding whether the client contested the alleged default in the mortgage payment and had any defenses. If respondent received no answer, he would routinely send another status letter repeating these questions and would also send a copy of an answer denying the foreclosure allegations.

{¶ 6} If a motion for summary judgment were filed in the foreclosure case, respondent would send another letter to the client with a copy of the motion. In the letter, respondent would again ask if the client had any defenses and would warn the client that the absence of any defenses meant that respondent had no basis to defend against the motion and that the court would enter a judgment for the mortgage company against the client. If the client did not respond, respondent generally did not oppose the motion or appear at any hearing.

{¶ 7} When respondent received notice that summary judgment had been entered against a client in a foreclosure case, he routinely sent letters notifying the client of the judgment, the scheduling of a sheriff's sale, and the concluding steps of the foreclosure. Respondent would explain that it was important for the client to contact the foreclosure companies concerning negotiations with the lender. In cases in which the lender negotiated with the foreclosure companies concerning the mortgage default, respondent did not participate in the negotiations on behalf of the client. Neither the president of the foreclosure companies nor any of its employees is admitted to the practice of law.

{¶ 8} In January 2009, respondent voluntarily terminated his relationship with the foreclosure companies and stopped accepting their referrals. Afterwards, respondent terminated his relationship with referred clients having a pending or open matter, and he sought leave to withdraw from all pending cases.

{¶ 9} In that same month, the Ohio Attorney General filed a complaint against the foreclosure companies in the Hamilton County Court of Common

Pleas alleging violations of, inter alia, the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq. The attorney general alleged that the foreclosure companies (1) failed to deliver services within the prescribed period of time, (2) knowingly sold services to consumers that carried no substantial benefit and resulted in detrimental reliance by the consumer, and (3) made false or misleading representations to consumers.

{¶ 10} Respondent now works as a staff attorney for a Kentucky court of appeals judge.

{¶ 11} Respondent admitted and the board found that his conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client), 1.4(c) (requiring a lawyer to inform a client that he does not maintain professional-liability insurance), 5.4(a) (prohibiting a lawyer from sharing legal fees with a nonlawyer), and 5.5(a) (prohibiting a lawyer from assisting another to practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction). We accept respondent's admission and the board's finding of misconduct.

**Sanction**

{¶ 12} In recommending the six-month stayed suspension, the board weighed the aggravating and mitigating factors of respondent's case. BCGD Proc.Reg. 10(B). Respondent engaged in a pattern of misconduct involving multiple offenses against vulnerable persons, i.e., clients facing foreclosure of their homes, which are aggravating factors. BCGD Proc.Reg. 10(B)(1)(c), (d), and (h). Mitigating factors include that respondent had no prior disciplinary record, that he lacked a dishonest or selfish motive, that he made a timely effort to rectify his misconduct, and that he fully cooperated in the disciplinary proceedings. BCGD Proc.Reg. 10(B)(2)(a), (b), (c), and (d). In addition, the

parties stipulated that respondent reported his misconduct himself and that he no longer actively engages in the private practice of law.

{¶ 13} We have previously considered disciplinary cases in which a lawyer enters into a joint arrangement with a nonattorney company to represent clients in mortgage-foreclosure proceedings. See, e.g., *Geauga Cty. Bar Assn. v. Patterson*, 124 Ohio St.3d 93, 2009-Ohio-6166, 919 N.E.2d 206; *Disciplinary Counsel v. Willard*, 123 Ohio St.3d 15, 2009-Ohio-3629, 913 N.E.2d 960; *Mahoning Cty. Bar Assn. v. Palombaro*, 121 Ohio St.3d 351, 2009-Ohio-1223, 904 N.E.2d 529; *Cincinnati Bar Assn. v. Mullaney*, 119 Ohio St.3d 412, 2008-Ohio-4541, 894 N.E.2d 1210. These associations present "the same ills as have respondent's alliances – insufficient attorney-client communication and case preparation, nonattorney promotion of the lawyer's legal services, the aiding of the unauthorized practice of law, and the sharing of legal fees. Together, these failings signal the surrender of an attorney's ability to exercise independent professional judgment on a client's behalf and manifest an overarching breach of the lawyer's duty of loyalty to the client." *Patterson* at ¶ 33, citing *Willard*.

{¶ 14} Our sanctions in these cases have varied from a public reprimand for an inexperienced attorney, see *Mullaney* at ¶ 40, to a stayed suspension for more seasoned attorneys, *Mullaney* at ¶ 41 and *Palombaro*, and to a partially stayed suspension for other attorneys, as in *Patterson*. Unlike the attorney in *Patterson*, who received a harsher sanction, there is no evidence of any prior disciplinary record for respondent. And unlike the inexperienced attorney who received a lesser sanction in *Mullaney*, respondent was not a new associate constrained by practices in place at a law firm.

{¶ 15} Therefore, after considering all the pertinent factors, we agree that a six-month suspension with the entire suspension stayed upon the condition that respondent commit no further misconduct is commensurate with his misconduct. Respondent is hereby suspended from the practice of law in Ohio for six months,

with the entire period stayed on the condition that he commit no further misconduct. If respondent fails to comply with the terms of the stay, the stay will be lifted, and respondent will serve the six-month suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J.,[1] and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

John G. Slauson, Rosemary D. Welsh, and Dimity V. Orlet, for relator.

John J. Mueller, L.L.C., and John J. Mueller, for respondent.

_____

1. The late Chief Justice Thomas J. Moyer participated in the deliberations in, and the final resolution of, this case prior to his death.