**KENTUCKY BAR ASSOCIATION,**
Movant,

v.

**Christopher S. HARWOOD, KBA**
**Member No 92056,**
**Respondent.**

**No. 2010–SC–000715–KB.**

Supreme Court of Kentucky.

March 24, 2011.

Amended June 16, 2011.

### OPINION AND ORDER

The Respondent, Christopher S. Harwood, KBA Member No. 92056, was suspended from the practice of law by the Ohio Supreme Court for a period of six months, stayed upon the condition that he commit no further misconduct. That suspension stemmed from Harwood's representation of clients referred to him by two foreclosure companies which resulted in the violation of five rules of professional

conduct. The underlying facts, as set forth by the Supreme Court of Ohio in *Cincinnati Bar Association v. Harwood,* 125 Ohio St.3d 31, 925 N.E.2d 965 (2010), are as follows:

In September of 2008, Respondent accepted an offer to perform legal work for American Foreclosure Professionals, Inc. and Foreclosure Assistance USA, Inc. ("foreclosure companies"). Between October 2008 and January 2009, Respondent represented over fifty clients whom the foreclosure companies referred to him. These clients included persons who resided in Ohio, as well as West Virginia and California. Respondent signed a document agreeing to the procedures that the foreclosure companies expected him to follow in representing their customers. These companies solicited persons who were facing foreclosure and represented that they could save their homes from foreclosure by negotiating with the lender.

The foreclosure companies charged between $900 and $1,200 for the services they provided and informed customers that the fee included legal representation arranged for and paid by, in part, the companies. The foreclosure companies asked their customers to execute a request for legal services and then forwarded the executed request and the client's contact information and goals (e.g., keeping or selling the property) to Respondent. Respondent received $100 to file an answer in each case referred to him.

Upon receiving a referral and an executed agreement for legal representation, and generally more than a month before filing an answer, Respondent would send a case-status letter with copies of a motion for enlargement of time to respond. In the letter, Respondent asked each client to contact him regarding whether the client contested the al-

leged default in the mortgage payment and whether the client had any defenses. If Respondent received no answer, he would routinely send another status letter repeating these questions and would also send a copy of an answer denying the foreclosure allegations.

If a motion for summary judgment was filed in the foreclosure case, Respondent would send another letter to the client with a copy of the motion. In the letter, Respondent would again ask if the client had any defenses and would warn the client that the absence of any defenses meant that Respondent had no basis to defend against the motion, and that the court would enter a judgment for the mortgage company against the client. If the client did not respond, Respondent generally did not oppose the motion or appear at any hearing.

When Respondent received notice that summary judgment had been entered against a client in a foreclosure case, he routinely sent letters notifying the client of the judgment, the scheduling of a sheriff's sale, and the concluding steps of the foreclosure. Respondent would explain that it was important for the client to contact the foreclosure companies concerning negotiations with the lender. In cases in which the lender negotiated with the foreclosure companies concerning the mortgage default, Respondent did not participate in the negotiations on behalf of the client. Neither the president of the foreclosure companies nor any of their employees is admitted to the practice of law.

In January of 2009, Respondent voluntarily terminated his relationship with the foreclosure companies and stopped accepting their referrals. Afterwards, Respondent terminated his relationship with referred clients having a pending

or open matter. He also sought leave to withdraw from all pending cases.

In that same month, the Ohio Attorney General filed a complaint against the foreclosure companies in the Hamilton County Court of Common Pleas alleging violations of, inter alia, the Ohio Consumer Sales Practices Act, *R.C. 1345.01 et seq.* The Attorney General alleged that the foreclosure companies: (1) failed to deliver services within the prescribed period of time; (2) knowingly sold services to consumers that carried no substantial benefit and resulted in detrimental reliance by the consumer; and (3) made false or misleading representations to consumers.

. . .

Respondent admitted, and the Board found, that his conduct violated the following Rules of Professional Conduct: 1.1 (requiring a lawyer to provide competent representation to a client); 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client); 1.4(c) (requiring a lawyer to inform a client that he does not maintain professional-liability insurance); 5.4(a) (prohibiting a lawyer from sharing legal fees with a nonlawyer); and 5.5(a) (prohibiting a lawyer from assisting another to practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction). We accept Respondent's admission and the Board's finding of misconduct.

■ Upon motion by the Kentucky Bar Association (the "KBA"), this Court ordered Harwood to show cause, if any, why reciprocal discipline pursuant to SCR 3.435 should not be imposed. In that motion, the KBA requested that this Court suspend Harwood from the practice of law in Kentucky "for a period of six (6) months, with the entire period probated on the condition that he commit no further misconduct. In addition, the KBA requests that Harwood be ordered to attend and successfully complete the Ethics and Professionalism Enhancement Program ("EPEP") as a condition of his probation.

In his response to the show cause order, Harwood does not contest the imposition of reciprocal discipline. Rather, he argues that any Kentucky suspension should be applied retroactively, and that the EPEP should not be a condition of his probation.

■ Any decision regarding retroactivity of Harwood's suspension lies within this Court's sound discretion. *KBA v. Katz,* 317 S.W.3d 592, 594 (Ky.2010). In *Katz,* we declined to impose a period of suspension retroactively. We noted particularly the fact that Katz had failed to report his out-of-state discipline to the KBA, and that he did not respond to this Court's show cause order.

In *KBA v. Marsick,* the Respondent had already served a six-month suspension imposed by the Ohio Supreme Court and requested this Court to run any Kentucky suspension concurrently. 986 S.W.2d 899 (Ky.1999). We declined, noting that "[if Marsick] advised the Bar of his Ohio suspension in a timely fashion, as required by SCR 3.435(1), and sought concurrent suspension at that time, perhaps this Court would have granted the motion." *Id.* Again, in *KBA v. Whitehead,* we refused to run a suspension concurrent to discipline already imposed in Arizona. 302 S.W.3d 66 (Ky.2010). We were persuaded by the fact that Whitehead did not respond to this Court's show cause order, and that he did not request that any suspension run concurrently.

Conversely, in *KBA v. Trainor,* we granted a request to run an attorney's suspension concurrently to a completed Ohio suspension. 145 S.W.3d 839 (Ky.

2004). The Ohio Supreme Court suspended Trainor for a period of six months, to be stayed on the condition that he provide certain accountings of clients' funds. He complied with the conditions and the stay expired. In its motion for imposition of reciprocal discipline, the KBA requested that Trainor's Kentucky suspension run concurrently to the already-served Ohio suspension. We granted that request without specifically discussing the issue of retroactive discipline. However, the opinion and order does note that Trainor's misconduct, arising from inadequate accountings of IOLTA accounts, resulted in no pecuniary loss to any client.

■ We cannot impose retroactive discipline if to do so would "unduly depreciate the significance of our own disciplinary actions." *Marsick,* 986 S.W.2d at 899. As the Ohio Supreme Court noted, Harwood engaged in a pattern of misconduct that involved multiple offenses and vulnerable clients facing foreclosure. *Harwood,* 925 N.E.2d at 968. His actions would constitute violations of five of Kentucky's Rules of Professional Conduct.

Though the KBA does not move for a retroactive sentence, as in *Trainor,* it does emphasize several mitigating factors. Harwood reported his own misconduct to the Cincinnati Bar Association. He fully cooperated in the Ohio proceedings. He self-reported his suspension in a timely manner to the KBA. Further, he has no prior disciplinary history in Kentucky or Ohio. The Ohio Supreme Court, in its order of suspension, noted that Harwood "lacked a dishonest or selfish motive." *Harwood,* 925 N.E.2d at 968. Finally, Harwood has fully complied with the proceedings in Kentucky. Considering these circumstances, we believe Harwood has shown sufficient cause why the reciprocal suspension should be applied retroactively.

■ Harwood also argues that "reciprocal discipline," within the meaning of SCR 3.435, would not include a requirement that he attend the EPEP, because this condition is not available in Ohio. He asserts that the EPEP condition qualifies as additional punishment, where SCR 3.435(4)(b) allows only for the imposition of a *lesser* sanction. This argument must fail because attendance at the EPEP does not constitute punishment.

Accordingly, it is hereby ORDERED as follows:

1. Christopher Harwood, KBA Member No. 92056, is hereby retroactively suspended from the practice of law in Kentucky for a period of one-hundred eighty (180) days, probated for one year, effective April 7, 2010. His suspension is to run concurrently with the six (6) month probated sentence entered by the Ohio Supreme Court.

2. Harwood must attend and successfully complete the Ethics and Professionalism Enhancement Program within one (1) year of the date of this Order. Harwood must not apply for CLE credit of any kind for attendance at the EPEP and will furnish a release and waiver to the Office of Bar Counsel to review his records with the CLE Commission for one year from the completion of the EPEP to verify that Harwood has not reported any hours to the CLE Commission based on his EPEP attendance.

3. Harwood is directed to pay all costs associated with these disciplinary proceedings.

All sitting. All concur.

ENTERED: March 24, 2011.

/s/ John D. Minton, Jr.

Chief Justice